### N. Y. P. & O. R. R. Co. et al. v. Margaret Stubbings.

1. DAMAGES FOR CHANGE FROM PRIVATE TO PUBLIC TRACK.

Where a private switch track, used by a manufacturing company, is subse-quently appropriated by a railroad company and converted into a main track, and the grade raised about two feet, thereby interfering with ingress and egress to abutting property, the measure of damages to such property, pur-chased prior to the change, is not restricted to its rental value, but should include any substantial injury to the land itself which may be shown to exist. Evidence of the value of property prior to and after the change is, therefore, admissible.

2. ABUTTING OWNERS' INCIDENTAL RIGHTS.

An abutting owner, in addition to the general interest which the public has in the street, has an incidental title to certain facilities and franchises, such as the right of ingress and egress to property, and where this right be substantially impaired by the location and operation of the railroad, the property owner is entitled to recover damages.

3. FAILURE TO CHARGE FULLY AS TO MEASURE OF DAMAGES.

Where, in such an action, the charge of the court is not definite as to the measure of damages, in that it does not go far enough, but so far as it goes is right, it is the privilege of the parties desiring more explicit instructions to ask for them, and failing to do so, the failure of the of the judge to charge is not ground for reversal.

4. DEEDS—TERMINI EXCLUDED.

A deed conveying "all the land lying between the strip one hundred feet wide, herein above described, and the Pennsylvania and Ohio canal, etc," convey-ing a supposed locality between two points, excludes the termini and does not, therefore, convey to the center of the canal.

5. MEANING OF THE WORD "NORTHERLY."

The word "northerly," used in a deed, does not necessarily mean due north, but when not controlled by position of monuments, or by lines described

with reasonable certainty, may be construed to mean due north, and particularly when it is necessary to so hold in order to prevent uncertainty.

HEARD ON ERROR.

LAUBIE, J.

The New York, Pennsylvania & Ohio Railroad Company against Margaret Stubbings is proceeding in error brought to reverse the judgment of the court below, upon the verdict of a jury in the case pending in that court, wherein Margaret Stubbings was plaintiff and the New York, Pennsylvania & Ohio Railroad Company ,and others were defendants.

The action below, as finally submitted to the jury, was one to recover damages sustained, as is claimed by the plaintiff below, by reason of the construction and operation of the railroad of the New York, Pennsylvania & Ohio Railroad Company across Federal street in this city, at the point where Mrs. Stubbing's property abutted upon the street.

A number of exceptions were taken during the course of the trial, and while the exceptions largely occur in the evidence to the jury, yet there is no point made to us, that the verdict is contrary to the evidence. It seems to have been brought before us, all the facts, for the purpose of enabling the court to fully understand the nature of the case and the objections made.

The first error claimed, is in the reception of evidence on the part of the plaintiff below, by reason of the damages sustained by her.

It seems that when Mrs. Stubbings became the owner of the property in question there was a railroad track across Federal street at precisely the same location now claimed to be owned by the New York, Pennsylvania & Ohio Railroad Company. This track was a private switch, for the company described in this proceeding as Brown, Bonnell & Co. It was their switch, running from, perhaps, one or two railroad tracks into their mill and which existed for a number of years in this condition in front of the plaintiff's property, without complaint upon her part. It appears that it was there and the track was there in operation at the time she purchased this property.

The complaint is that this track was subsequently, perhaps in the year 1882, taken possession of by this railroad corporation and the grade changed, raised from eighteen inches to two feet or more across Federal street; that the egress and ingress to her property was thereby damaged; and that from a private switch of a private corporation, this railroad company transferred this track into a track of a railroad company and made it part of its main line or branch line, called the Girard branch, running from its track in the neighborhood of Youngstown to the town of Girard, thus transforming what was a private switch of a private company into the main track of the railroad company, making it into a public railroad.

The plaintiff below inquired of witnesses, for the purpose of fixing the damages sustained by plaintiff, what the value of her property was just prior to the appropriation, and what its actual or market value was immediately thereafter; or, in other words, the decrease or loss by reason of the changed use and character of this railroad track.

There was objection made and there seemed to be this difference between the court and counsel for the defendants, the railroad company. Counsel for the railroad claimed that the measure of damages was not the difference in the actual value of the property, but that it was the differ•

Railroad Co. v. Stubbings.

ence in the rental value and could not be regarded as permanent injury to the property itself. The court seemed to hesitate to go to the extreme length, as claimed by the counsel for the plaintiff below. At all events there was a complete line of demarcation upon the point by counsel for the railroad and the court as to the question of permanent injury, whether the plaintiff was entitled to recover for permanent injury or whether it would be confined to the rental value.

In this connection it may be as well to consider and determine points expressly complained of.

The judge in his charge referred to this question of damages, perhaps in three different places. First, he says to the jury in his charge:

"Upon this question the court says to you as a matter of law, that if the lands of the plaintiff mentioned and described abut upon Federal street, she has in addition to the general interest which the public has in the street, an incidental title to certain facilities and franchises, one of which is the right of ingress and egress to her lot, and if you should find that this right has been subtsantially impaired by the defendants in the location and operation of their railroad, along said street, if you find that they have so done, and that the location of said railroad track by the defendants is permanent in its character, then upon this proposition you should find in favor of the plaintiff, and in your determination of the damages she has sustained, if you find that she has sustained damages by reason of the acts of the defendant, you should not limit your inquiry as to such damage, to the rental value of the property from the time the street was so used and occupied by defendant until the filing of the petition, or the difference in the rental value thereof, but you may and should consider any substantial injury to the land of plaintiff that may be proven to exist by reason of the means of ingress and egress to the lands from the street, having been impaired by defendants in the locating of their railroad track and the use of the same for the purposes for which it was designed and has been used by defendants, and for this purpose you should consider the change of grade, if any has been shown to have been made, the manner in which the railroad tracks have been located and any other matters shown to exist that would establish this fact as well as indicate clearly that the improvement was made permanent in its character.

"In determining this question, you may and should consider the condition of the property claimed to be affected by the acts of the defendants, and if from the testimony you find that prior to, and at the time the defendant constructed their railroad track along the street, if you find that the same was so constructed, that a railroad track used and owned by a private corporation had been laid along said street and in front of said property, and where the same abutted upon the street, this should be taken into consideration by you, and your verdict in case you should find for the plaintiff, should only be for such amount as would compensate the plaintiff for damages she sustained, if any, by reason of the change of the character, construction and use of such track by the defendants. If you find in favor of the plaintiff upon each and all the propositions submitted to you, under the directions here given, your verdict should be for the plaintiff in such sum as will fully compensate her only for any actual damage she sustained at the time the defendants occupied the street by reason thereof.

. Now while it may be stated in regard to this charge that it does not in a very definite form instruct the jury what they should regard as a measure of damages, yet it said no more than the law would allow as recoverable; as far as the court did go it was right. If the parties wanted the court to go further, it was their privilege to have asked for instruction, but that was not the difference between the counsel and the court.

Counsel for the railroad company maintained that the measure of damages was the difference in rental value at the time of the filing of the petition, and not one of permanent injury to the property itself. Now it will be noticed, that the court alludes here to the recovery, to the ·change, character, construction and use of the track by the defendant. The facts disclose that there had been for many years prior to the time the railroad company took possession of the railroad track at this point across Federal street, a track owned by a private corporation; that it was there at the time the plaintiff purchased the property, and that it had been there a great many years; and up to the time the railroad company took possession of this railroad. Now with this view of the facts and the circumstances, the court properly alludes to the right of recovery simply as to the change of the construction and use of the tracks, in their character and construction, as made by the railroad company.

Now in reference to this testimony, the court permitted the plaintiff below to show by witnesses what the difference was in the value of this property before and after this conversion of it by the railroad company to part of its main line.

It is true, that of some of these witnesses questions were asked as to the value of this property before the railroad took possession of it, and its value immediately thereafter, without calling attention to situation of the property, subsequently, but the question, of course, refers to the·property in its condition with all of its surroundings. It seems, however, in one case at least, that of Mr. Mackey, that he did not so understand the question, that he did not understand that he should consider what the value of the property was immediately or prior to the appropriation by the railroad company. And upon cross-examination he was asked the question including the change in character, construction and use of the track, so that the witness did give his idea of the value of the property with the Brown, Bonnell & Co. switch there, and afterwards its value when that switch was changed and transferred into a public railroad by the defendant.

To one, at least, if not more of these witnesses, counsel for the plaintiff propounded the question, "did this condition or situation of the property include the value of the property immediately before the railroad had appropriated this track to its use, and considering that the switch of Brown, Bonnell & Co., existed upon Federal street?" And this was objected to.

Now, so far as this testimony was concerned, it finally brought to the jury, from the testimony of all these witnesses, what the witnesses considered the property actually was worth before this appropriation, and before the Brown, Bonnell & Co. track was transferred by the defendant into the main line of its track; but whatever the result to the value of it by reason of the change, construction and appropriation of the track by the railroad company, this, as I have said, was the limitation. It is determined for us, it is one of those classes of cases which

Railroad Co. v. Stubbings.

have a new remedy, provided by the statute in this state, Sec. 3283, Rev. Stat., and the latest decision bearing upon it, or the limitation of it, is Columbus, H. V. & T. R. R. Co. v. Gardner, 45 Ohio St., 309 [13 N. E. Rep., 69].

Section 3283, Rev. Stat., provides a remedy to the land owners against a company laying a railroad track in a public street in front of the land owner's property, but declares that in such case, that the railroad company shall be responsible to the land owners for injury to property by reason of the construction of such tracks. The court, in Columbus, H. V. & T. R. R. Co. v. Gardner, *supra*, held as in the one, which precedes it, and to which the court refers, that this includes any injury of whatever nature or character the plaintiff has sustained by reason of the construction, use and operation of the track. They question whether to include noises, smoke, cinders and inconveniences of that character to the plaintiff and not to the community at large; and that the only question is, whether the injury complained of is one comprehended within the meaning of the terms used in this statute. It is different from other actions, covered by damages up to the time of the filing of the petition. And this court says, in the question involving this case, that it included every injury of whatever character by reason of the construction and operation of the track; and they held further, that this injury is in a sense to be measured by the decreased rental value, but that it is a permanent and material injury to the property itself, as it decreases the rental value of the property.

Now first, whether or not the court properly instructed the jury in this case as to the damages the plaintiff sustained by the change of the construction, character and use of this track. It is sufficient for us to say, that the court did not err, in the admission of evidence or in the charge which he gave. There might have been a different question presented, but it was not. It might have been that it should not have thus been restricted by the court, and, as thus restricted, the jury might have given the actual value of the property before the appropriation and the actual value of it after the appropriation.

Now comes the public corporation and railroad company and it takes a portion of the street and lays its track, or converts the property into this track. Now, for the first time, it is made a public corporation, and is brought within the remedy given to the land owner; but, as I have said, we do not express any opinion upon the question. It is possible, if we express any at all, that it would be in accordance with the opinion as expressed by the court below.

Passing now these two matters introduced by this evidence and the charge as being not erroneous, we come to another proposition and that is, that the court below refused to give certain requests asked for by the defendant below, substantially this, that the plaintiff having purchased the property with the switch of Brown, Bonnell & Co. across Federal street, located at the same point as this track is, being substantially the same track, graded and made very temporary, but being there at the time the plaintiff bought, and being used by these various railroad companies in entering to and upon the premises of Brown, Bonnell & Co., that no recovery could be had by the plaintiff in this action. What I have already said dismisses that proposition upon the question of what injury or damage the plaintiff was entitled to recover.

Another question presented is as to the effect which the court gave to certain evidence offered by the defendant below for the purpose of

showing that the plaintiff did not own the land in question abutting upon Federal street. There was a little tract of land owned by the plaintiff amounting to less than an acre, and her first purchase was about in the year 1868, when she came into possession of a small portion of the Ohio and Pennsylvania canal; but it was claimed that sometime prior to the execution of the deed to her the premises in question had been conveyed by deed to the Cleveland & Mahoning Railroad Company or predecessors of the New York, Pennsylvania & Ohio Railroad Company, dated April 21, 1857. The description in that deed is as follows: "All the lands lying between the strip one hundred feet wide, herein above described, and the Pennsylvania and Ohio canal and bounded on the west by the center of Crab creek and east by the line of lands belonging to the estate of said Homer Hine, deceased;" but it is now claimed by reason of the conveyance and this description, that these grantors or common source of title, at the time conveyed to the center of the canal to predecessors of the defendant.

It is conceded, that if this description covered all the estate conveyed to the Cleveland and Mahoning Railroad Company to the center of the canal, it materially interferes at least with the right of the plaintiff to recover, and therefore that it was a material matter to be determined by the court. Counsel for the railroad company claimed that it conveyed to the center of the canal, but the court charged otherwise, or that it did not convey to the Cleveland and Mahoning Railroad Company anything in the bed of the canal.

Now there is no doubt of the general rule, that where grantors bound an estate by a boundary somewhat indefinite by the terms of the deed, or by a canal, that it covers it to the center; there is no dispute upon this proposition, but here the question is not that, but whether the description is the tract lying between two things or whether the termini here includes the ground lying between a certain strip of land and the Ohio and Pennsylvania canal. Does that carry it to the center of the canal the same as if it had been bounded upon the canal or conveyed to the Ohio and Pennsylvania canal?

We think it does not and that it is exclusive in its nature here, that it excludes the termini, and that it is a supposed locality between two points, or a line between two points and in its nature is exclusive and in classification is excluded by the points named, and as applied to these and other matters of that kind by the court, it is to be exclusive. It is true, that in one case at least to which I have called the attention of counsel, the Supreme Court of New Jersey has held, that a railroad charter is not excluded where the charter is from one town to another, or from one place to another, but that in all private deeds or private rights granted, generally it is exclusive; it is exclusive unless it is changed or a different classification given to it by the description in the deed. The description may be enlarged and its classification may be changed, but unless it was so done, the law excludes the termini. See 12 Maine, 361; also Revere v. Leonard, 1 Mass. 91; and the general doctrine was referred to and conformed with, that it was where the deed excluded the termini, when applied to locality or to time or to place in 5 Metcalf, 439.

Now there is nothing in this deed, which at all enlarges the description of the land lying between the strip, one hundred feet wide, and the Pennsylvania and Ohio canal; it is all there is of it.

Another ground of error claimed in this case was the construction of the deed given to the plaintiff, that is that the word "northerly" could be taken due north, and that if it is so constructed, it materially affects the plaintiff's right of recovery, in that, that it would cut down her front upon Federal street perhaps one-half, and that it became a question materially important in this case.

The description is as follows: "Situated in the city of Youngstown, county of Mahoning, state of Ohio, and known as the bed of that portion of the Pennsylvania and Ohio canal, beginning at that point on the said canal where it is crossed by the bridge of the Y. & L. & Y. R. road, east of the mouth of Crab creek, at the westerly line of said bridge; thence westerly along the bed of the said canal, one hundred feet. The beginning point referred to above, is intended to be at a line drawn northerly across the bed of said canal from the westerly end of the wooden abutment of said railroad bridge on the southerly side of said canal."

Upon this description, counsel for the plaintiff ask the court to direct the jury that this line of the plaintiff's premises ran due north from the point here referred to the westerly end of the wooden abutment of said southerly side of said canal. Still the court did not go to the length claimed by the plaintiff below or still reach the instruction as claimed by the defendant, but instructed the jury that the word "northerly" did not necessarily mean due north and that the jury should determine where the east line was from the evidence of the case.

As to the piece of land conveyed, there was no attempt to define exactly how far the east and west lines extended north and south, except as it might be found by the evidence. It was a portion of the bed in the Pennsylvania and Ohio canal for a distance, looking along it, of one hundred and forty feet.

The court has passed upon the question of the meaning of the term "northerly" in the deed and it is held and has been held, where it is not controlled by position of monuments in the deed referred to, or by some other line described with reasonable certainty, that it may be regarded as a line run due north, and especially so, when it is necessary so to hold in order to prevent an uncertainty or from reading avoid uncertainty.

In this case, the grantors were not starting from a certain point and running around within the bounds of a compass; they were given nothing except one line, the east line of the tract and its distance westerly along the canal, but they did give the line which should be taken as the east line of the tract: Not a mere point at a certain place on one side of the canal to start from, but they gave the east line, the line bounding the tract in its full width from north to south, and from that line at a distance point the westerly boundary or western line was to be determined, one hundred and forty feet west of that or one hundred and forty feet to the line which should be paralleled to the line of the tract as given. "The beginning point referred to above is intended to be a line drawn northerly across the bed of said canal from the westerly end of the wooden abutment of said railroad bridge, on the southerly side of the canal."

In the first deed, the grantors give the westerly line of the bridge as a point from which, one hundred and forty feet westerly, is to be measured in the bed of the Pennsylvania and Ohio canal. That

bridge spanning the canal and the westerly line of that bridge is given as the point or east line of the tract. Now, this branch, in fear that we might take a portion of the abutment of the bridge, the grantors restricted it to a point of the abutment; that is, there is to be a line drawn exactly northerly across the bed of said canal from the westerly end of the wooden abutment, so that it should not take any of the abutment, or the line of the bridge was to be the line drawn exactly from the westerly end of the abutment, substantially saying, that the line was to be the line from that parallel to the westerly end of the bridge.

We think that the court did not err in this case in this respect. The court considered the matter as uncertain in its description and left it to the jury to determine from the evidence whether or not this line was to run due north or in the other form as claimed by the plaintiff below and there is no exception to that. I have said to what the construction of the word "northerly" in this description refers, and we think the court did not err in this point and that ends this case.

From all the propositions presented there is no error and we think the common pleas judgment should be affirmed.